James *v.* Humphrey, Auditor.

5-950                                    289 S. W. 2d 691

Opinion delivered April 30, 1956.

*Herndon & Schoggen,* for appellant.

*Tom Gentry,* Attorney General, and *Ben J. Harrison,* Asst. Atty. General, for appellee.

Paul Ward, Associate Justice. Appellants, as taxpayers of the State of Arkansas, brought this suit in the Chancery Court of Pulaski County to have declared illegal and void a large number of contracts for printing and supplies for the State of Arkansas awarded on bids received by the Secretary of State on July 1, 1955. From an adverse decision appellants prosecute this appeal. To reverse the decree of the trial court appellants rely on the following grounds: First, the advertisement for proposals published by the Secretary of State did not advertise for separate sealed proposals as specifically required by Section 14-307 of the Statutes of Arkansas. Second, the bids were not submitted as separate sealed proposals.

Third, the opening of bids by the Secretary of State as required by Section 14-318 of the Arkansas Statutes was not complied with in that bids from various bidders on the several contracts sealed together in one envelope were not opened at a public meeting at the time and place designated in the advertisement. On the contrary, such envelopes were merely slit and the contents afterward removed and tabulated. Fourth, that the keeping of the bids opened and unpublished over a period of five days, two of them being holidays, violated the secrecy of the proposals and renders contracts let thereon invalid.

In all parts material to this case said Section 14-307 provides as follows: The Secretary of State shall publish a notice in the paper "stating that *separate sealed* proposals for the furnishing of the supplies . . . are invited . . ." and will be received at his office on the 15th day after the first publication. (Emphasis supplied.)

In like manner said Section 14-318 provides substantially as follows: "At the time and place designated in the said advertisement for the opening of bids the Secretary of State, in the presence of such persons as choose to attend, shall open all bids submitted, and shall award each of the said contracts, respectively to the person or persons who, after due deliberation, he [they] shall find to be the lowest bidder in the aggregate for the same." Two or more contracts may be awarded to the same person.

There is no dispute about the facts as developed by the testimony, and it is agreed that the chancellor stated them correctly, as follows: "The principal facts, as developed by the evidence, are undisputed. The Secretary of State advertised for proposals for the furnishing of printing and supplies under a number of different categories or classifications. Numerous printers and suppliers throughout the State submitted proposals on one or more of these categories. Some printers submitted bids on more than one classification. All proposals were submitted on forms supplied or approved by the State

and each proposal was submitted on a separate form with a bond attached thereto. In some instances, however, several proposals were enclosed and sealed in the same envelope before delivery to the Secretary of State.

"At the appointed hour (11:00 A. M. on July 1, 1955), a number of the bidders assembled at the Office of the Secretary of State. The Secretary and his staff then proceeded to slit open the envelopes but, at that time, did not remove the contents from them. This activity was done in the private office of the Secretary of State which then contained his staff and approximately thirty interested bidders. Because of the crowded condition of the room, the Secretary of State indicated that more room was needed to spread out and properly tabulate and consider the various proposals. One of the bidders 'moved' that the interested spectators move out and leave the tabulation to the Secretary and his staff; whereupon most of the interested spectators left the private office of the Secretary of State. There is no evidence that the Secretary of State or his assistants asked that anyone leave. The door to this office was never closed and there was no indication that the spectators or other interested citizens could not view the proceedings, except for the limitation of space. The business of tabulating the bids continued for the next several days, interrupted only by necessary recesses for meals, and it was dispensed with at night and throughout an intervening weekend and holiday. Throughout this time several persons interested in the process observed the tabulation and examination of the bids. During the time actual tabulation was not being conducted, the proposals were kept in a safe in the office of the Secretary of State."

We agree with the conclusion reached by the chancellor and in support thereof we adopt his language as set out in the decree: "The first two contentions of plaintiffs may be dealt with together, as they refer to the requirement in the statutes regarding the advertisement and submission of 'separate sealed proposals.' Plaintiffs contend that this phrase, as used in the statute, re-

quires the Secretary to advertise for and the bidders to submit proposals which are sealed separately; and they contend that the fact that several proposals from one or more bidders were sealed together in one envelope is a violation of the statutory requirement. I cannot agree with this position. The apparent reason for the requirement of separate proposals is to facilitate the comparison of one proposal to another and to safeguard the public against possible collusion in the submitting of bids. The requirement that the proposals be sealed is, of course, to protect against tampering with the proposal after it has left the hands of the bidder. These safeguards are protected even though several are sealed in the same container or envelope until, at a given time, they are opened by the proper authorities of the State. Thus, under the proof here, all proposals submitted were separate and were sealed in such a manner as to meet the requirement of the statutes. Parenthetically, a grammatical construction of the phrase also supports this view. In the phrase 'separate sealed proposals' the words separate and sealed are both adjectives modifying the noun proposals. The exact meaning being, therefore, that the proposals should be separate from one another and that they should be sealed. This does not precisely mean, as plaintiffs contend, that each proposal should be sealed separately from every other proposal. Had that meaning been intended, the proper form of the phrase would have been 'separately sealed proposals.'

"Plaintiffs also contend that the Secretary of State did not comply with the statute (Ark. Stats. (1947) Section 14-318) in opening the bids and that after opening them they were left unpublished for a period of five days, thus violating the secrecy of the proposals, and that either of these alleged violations rendered the contracts let on the bids invalid. Section 14-318, Ark. Statutes for 1947, provides that at the time and place designated in the advertisement the Secretary of State, 'in the presence of such persons as choose to attend shall open all the bids submitted and shall award each of the said contracts respectively to the person or persons who, after due de-

liberation, they shall find to be the lowest bidder in the aggregate for the same.' There is nothing in the evidence that indicates a violation of this portion of the statute. The bids were opened beginning at 11:00 A. M. on July 1, 1955, at the office of the Secretary of State, which was the time and place designated in the advertisement. Because of the number of proposals and the number of contracts to be bid upon, the task of examining, tabulating and comparing the proposals required considerable time. The phrase 'after due deliberation' from the quoted portion of the statute above indicates that the Secretary should take a reasonable time to determine the lowest responsible bidder for each contract. It would be impossible for the task to be completed at the exact instant of 11:00 A. M. There is no proof in this case to the effect that any person who chose to attend was prohibited from doing so; on the contrary, there is in this record the testimony of several who did attend and observe the tabulation from time to time. The fact that the bids were left open and unpublished for a period of five days was necessary because of the multiplicity of proposals coupled with intervening holidays. Certainly the statutes do not require the deliberation of bids to be conducted continuously until the final lowest responsible bidder has been ascertained. Thus, under the facts of this record, the manner in which the Secretary proceeded to tabulate the bids after their original opening does not violate the statutes governing this activity.''

In accordance with the above, the decree of the trial court is affirmed.

Affirmed.

Justice GEORGE ROSE SMITH dissents.

GEORGE ROSE SMITH, J., dissenting. In 1874 the legislature adopted a detailed plan for safeguarding the integrity of competitive bids for certain public contracts. It seems to me that the majority opinion, by its failure to give effect to two provisions of the 1874 law, approves a procedure far more lax than that which the lawmakers meant to sanction.

The statutory scheme is a simple but effective one. It is contemplated that a single advertisement will invite bids for a number of different contracts, which must be let separately. To the end that the bids for each particular contract may be considered together the law requires that separate sealed proposals be submitted and that each proposal be indorsed to show the contract to which it pertains. Ark. Stats. 1947, §§ 14-307 and 14-313. In this way all the sealed bids for a particular contract can be grouped together and opened at the same time. It is required that the bids be opened in the presence of such persons as choose to attend. Ark. Stats., § 14-318. The contract is then awarded, after due deliberation, to the lowest responsible bidder. *Ibid.* The vital precautions against the possibility of fraud or collusion lie in the requirement that separate sealed proposals be submitted and that these proposals be opened in the presence of any interested persons who care to be present.

The procedure that is actually being followed is not that contemplated by the statute. A person who bids for more than one contract is permitted to inclose all his proposals in a single sealed envelope. This practice makes it impossible to assort the sealed envelopes and open simultaneously all those relating to a particular contract. Instead there is originally a mere slitting of the envelopes; it may be several days before the bids for a given contract are gathered together and compared. Yet the slitting of the envelopes effectively destroys the secrecy of every bid and leaves the way open for fraudulent manipulation in the interval that elapses before the bids are compared. Of course the issue is not whether such fraud has actually occurred; it is whether the law permits even the possibility to exist.

In approving the practice that now prevails the majority first hold that the requirement of "separate sealed proposals" is satisfied by the inclosure of several proposals in one envelope. In this view the words "separate" is considered as having been intended to prevent a bidder from lumping two or more contracts together in one proposal. This interpretation of the law is unsound.

The legislature had already provided, by § 3 of the act, that the various contracts must be let separately. Ark. Stats., § 14-305. There was no need to repeat the word "separate" in the same sense in § 4 of the act; it would add nothing to what had already been said. In the latter section the word means something else: that the various sealed proposals must themselves be separate from one another. (This construction is of course grammatically impeccable, as the adjective "separate" can perfectly well modify the complete concept of a "sealed proposal" as distinguished from a proposal that may be sealed or unsealed.)

The majority also hold that the act of slitting the envelopes meets the statutory direction that the bids be "opened" in the presence of witnesses. This holding hardly seems to merit discussion. It is at least difficult to see why an interested person would make a trip to the state capitol merely to observe the slitting of envelopes. What he would be interested in is the privilege of being present when the contents of the envelopes are withdrawn and made available for inspection. That is the privilege that is denied to him by the majority's decision.